UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE LUIS MENDOZA, | Case No.: 1:17-cv-01210-BAM |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff George Luis Mendoza ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DBI") under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 7, 8.)

1

and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

In April 2006, the Commissioner found Plaintiff disabled as of July 1, 2005, and awarded him benefits under Titles II and XVI of the Social Security Act. AR 24.[2] Following a continuing disability review, the Commissioner determined Plaintiff was no longer disabled as of June 1, 2013. AR 24, 98-101, 102-05. After Plaintiff requested reconsideration, a State agency disability hearing officer held a hearing and affirmed that Plaintiff was no longer disabled as of June 1, 2013, due to medical improvement. AR 115-38. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). On March 1, 2016, ALJ Sharon Madsen held a hearing and issued a decision on March 23, 2016, finding that medical improvement had occurred, and Plaintiff was not disabled as of June 1, 2013. AR 21-43, 44-66. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-6. This appeal followed.

### Hearing Testimony

The ALJ held a hearing on March 1, 2016, in Fresno, California. Plaintiff appeared with his non-attorney representative, Gilbert Olguin. Impartial Vocational Expert ("VE") Cheryl R. Chandler also appeared. AR 24.

In response to questioning by the ALJ, Plaintiff testified that he has a driver's license, graduated from high school and completed some college units. AR 49. He does not need any help showering or dressing. He does household chores, such as dishes, sweeping and folding clothes. He does not cook, shop or socialize. On a typical day, he wakes up, eats and sits. He has trouble walking for long distances or standing. He uses his phone, watches TV, talks to his parents, and showers every night before going to sleep. He sometimes naps. AR 49-50.

When asked about his medical issues, Plaintiff testified that his blood pressure is under control with medications. He uses inhalers as needed for asthma and a CPAP machine for sleep apnea. As to his Henoch-Schonlein purpura ("HSP"), Plaintiff testified that he has weakness, pain and swelling in

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

his legs, along with lesions. He must elevate his feet every day for a couple of hours. Plaintiff also testified that he has side effects from his medications, including drowsiness, dizziness, fainting, nausea, and diarrhea. As to his kidneys, Plaintiff is taking medications and being seen regularly by his doctor. AR 50-53. Plaintiff further testified that he has constant lower back pain. To ease his pain, Plaintiff will lie down or take pain medication. AR 54-55.

When asked about his abilities, Plaintiff testified that he can lift and carry about 10 pounds. On average, he can stand about 10 or 15 minutes and can walk two blocks. He can sit for "quite a while." AR 55-56.

When asked about his depression and anxiety, Plaintiff testified that socializing, going out to places where there are a lot people and communicating with others cause him anxiety. His depression affects his everyday life, but he gets some help with medication and counseling. AR 56-58.

In response to questions from his representative, Plaintiff testified that he originally was found disabled because of severe depression, OCD, ADD and mental problems. He still suffers from OCD, constantly washing his hands and cleaning his surroundings and personal things. He also has ADD, and has problems concentrating and with forgetting things. Plaintiff described his health condition as "not good," because he constantly feels fatigue, weakness and has trouble walking, standing and sleeping. AR 58-61. He did not think he could work because of his condition. AR 61.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Cheryl Chandler. The ALJ asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume a hypothetical person of Plaintiff's age, education and work background. If this person could lift and carry 50 pounds occasionally, 25 pounds frequently, sit, stand or walk six to eight, but was restricted to simple, routine tasks, the VE testified that there would be a world of unskilled medium along with light and sedentary jobs available. AR 63.

For the second hypothetical, the ALJ asked the VE to assume a person who could lift and carry 20 pounds occasionally, 10 frequently, could stand or walk six to eight and needed to avoid concentrated exposure to cold, heat and wet environments and concentrated exposure to heights and dangerous machinery, also with simple routine tasks and occasional public contact. The VE testified

that there would be jobs for this person, such as inspector, hand packaging, marker, and garment sorter. AR 64.

For the third hypothetical, the ALJ asked the VE to assume a person who could lift and carry 20 pounds occasionally, 10 frequently, could sit six to eight and stand or walk two and everything else the same as hypothetical number two for postural and environmental, with simple, routine and occasional public. The VE testified that there would be jobs, such as nut sorter, toy stuffer and assembly work, assembler. AR 64-65.

For the fourth hypothetical, the ALJ asked the VE to add to hypothetical number three that this person would be off task about 15 percent of the day. The VE testified that there would be no work for this person. AR 65.

**Medical Record**

The relevant medical record was reviewed by the Court, and it will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's sequential evaluation process, the ALJ determined that Plaintiff's most recent favorable decision finding him disabled was dated April 24, 2006. At that time, Plaintiff had the following medically determinable impairments: an obsessive-compulsive disorder and a panic disorder. However, as of June 1, 2013, the date that Plaintiff's disability ended, he had not engaged in substantial gainful activity. The ALJ identified Henoch-Schonlein purpura, immunoglobulin A-associated vasculitis, stage two chronic kidney disease, obesity, borderline intellectual functioning and obsessive-compulsive disorder as Plaintiff's medically determinable impairments as of June 1, 2013. Nonetheless, the ALJ determined that since June 1, 2013, Plaintiff had not had an impairment or combination of impairments that met or equaled any of the listed impairments. AR 26-28.

Beginning on June 1, 2013, the ALJ found that Plaintiff continued to have severe impairments. However, based on those impairments, Plaintiff had the residual functional capacity ("RFC") to perform a range of work at the sedentary exertional level. Specifically, the ALJ determined that Plaintiff could lift and carry 20 pounds occasionally, 10 pounds frequently, could stand and walk two

hours and sit six to eight hours in an eight-hour workday. He also needed to avoid concentrated exposure to cold, heat, wet environments, heights, and dangerous machinery and was limited to performing only simple, routine tasks with occasional public contact. AR 28-33. Plaintiff did not have any past relevant work, but with his RFC, there were jobs existing in the national economy that Plaintiff could perform, such as nut sorter, toy stuffer and assembler. AR 33-35. The ALJ therefore concluded that Plaintiff's disability ended on June 1, 2013, and he had not become disabled again since that date. AR 35.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

Plaintiff argues that the Commissioner's decision should be reversed because the ALJ erred in her evaluation of the state agency physicians' opinions and in developing Plaintiff's mental RFC. Plaintiff also argues that there is an unresolved conflict between the VE's testimony and the occupational requirements of the representative jobs.

# DISCUSSION[3]

### A. Mental RFC

Plaintiff argues that the ALJ erred by failing to state a valid and reasonable basis for rejecting the mental limitations specifically articulated by the state agency physicians, Dr. H. Amado and Dr. Pamela Hawkins. (Doc. No. 13 at 9-10.)

On April 24, 2013, Dr. Amado completed a Mental Residual Functional Capacity Assessment. AR 507-09. Dr. Amado opined that Plaintiff had moderate limitations in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances. AR 507. Plaintiff also had moderate limitations in the ability to interact appropriately with the general public, respond appropriately to changes in the work setting and set realistic goals or make plans independently of others. AR 508. Dr. Amado further opined that Plaintiff was able "to perform simple 1-2 step tasks with adequate [concentration], persistence and pace" and "to interact appropriately with others but would fare best in a low-stress nonpublic setting." AR 509. He also was able to adapt to the usual changes in a work setting. *Id.*

Similarly, on November 12, 2013, Dr. Hawkins completed a Mental Residual Functional Capacity Assessment. AR 782-85. Dr. Hawkins opined that Plaintiff had moderate limitations in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances. AR 782. Plaintiff also had moderate limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. AR 783. Dr. Hawkins further opined that Plaintiff had moderate limitations in the ability to interact appropriately with the general public, respond appropriately to changes in the work setting and set realistic goals or make plans independently of others. *Id*. Dr.

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

Hawkins summarized that Plaintiff was "limited to understanding and remembering simple one and two step tasks," could "maintain concentration, pace and persistence for simple tasks" and "would be best suited to work with minimal social demands and no public contact." AR 784. Dr. Hawkins also indicated that Plaintiff could "adapt to a low demand work setting consistent with simple work," and "[f]or greatest success, changes should be introduced gradually." *Id.*

In evaluating these opinions, the ALJ reasoned as follows:

> I credit and give substantial weight to the opinions of Drs. Amado [] and Hawkins [] because they are consistent with the other evidence. For example, they are consistent with and adequate [sic] account for the claimant's mental impairments, especially in light of the unremarkable mental status examination findings, which showed normal thought content with a logical thought process, normal concentration, good memory, good insight, appropriate speech, and a cooperative attitude []. The opinions are also consistent with recent reports, showing a normal attention span, and normal ability to concentrate [].

AR 32.

Following consideration of the medical evidence and opinions, the ALJ determined that Plaintiff could perform jobs involving simple, routine tasks with occasional public contact. AR 28. Relying on this mental RFC and the VE's testimony, the ALJ determined that Plaintiff could perform the representative jobs of nut sorter (DOT Code 521.687-086), toy stuffer (DOT Code 731.658-014) and assembler (DOT Code 734.687-018). AR 34-35.

### 1. Limitation to Simple, Routine Tasks

Plaintiff first argues that the ALJ erred by giving substantial weight to the state agency physicians who opined that Plaintiff was limited to one- and two-step tasks, but by also failing to include that limitation in Plaintiff's mental RFC. Plaintiff further asserts that there is a conflict between an individual limited to one- and two-step tasks and jobs identified by the VE requiring Level 2 reasoning in the Dictionary of Occupational Titles ("DOT"). Plaintiff's argument relies, in part, on *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996 (9th Cir. 2015).

Courts have recognized that in *Rounds*, the Ninth Circuit made a critical distinction between a limitation to simple, routine tasks and a limitation to "one- and two-step tasks." *See Jones v. Berryhill,* No. CV 17-07404-AFM, 2018 WL 3689560, at *2 (C.D. Cal. July 31, 2018) (noting critical

distinction between a limitation to "simple routine and repetitive tasks" and a limitation to "one- or two-step instructions."); *Wilson v. Berryhill,* No. 1:16-cv-01861-SKO, 2018 WL 1425963, at *34-35 (E.D. Cal. Mar. 22, 2018) ("Both parties appear to agree that there is a critical distinction between the "simple one-or two-step instructions" assessment by Dr. Kalman and the "simple" work with "routine and repetitive tasks" limitation adopted by the ALJ, and both cite *Rounds v. Commissioner Social Security Administration* in support."). "The distinction is important because while an RFC to performing simple, routine tasks is consistent with Level 2 reasoning, an RFC to one- to two-step tasks is not." *Jones*, 2018 WL 3689560, at *2 (citing *Rounds*, 807 F.3d at 1003-1004 & n.6 (holding there is an apparent conflict between RFC limiting claimant to one- and two-step tasks and the demands of Level 2 reasoning; also noting that unpublished decisions of Ninth Circuit have concluded that an RFC limitation to "simple" or "repetitive" tasks is consistent with Level 2 reasoning); *Grigsby v. Astrue,* No. ECV 08-1413 AJW, 2010 WL 309013, at *2 (C.D. Cal. Jan. 22, 2010) ("Level 2 reasoning jobs may be simple, but they are not limited to *one- or two-step instructions*. The restriction to jobs involving no more than two-step instructions is what distinguishes Level 1 reasoning from Level 2 reasoning.") (emphasis in original). Following *Rounds*, district courts in this circuit have found reversible error in cases where the ALJ gave significant weight to opinions that a claimant was limited to one- to two-step tasks, but assessed an RFC that only limited the claimant to simple, routine tasks. *See Striet v. Berryhill*, No. 3:17-cv-00673-MMD-WGC, 2019 WL 386227, at *7 (D. Nev. Jan. 11, 2019), report and recommendation adopted, No. 317CV00673MMDWGC, 2019 WL 383996 (D. Nev. Jan. 30, 2019) (collecting cases); *Jones*, 2018 WL 3689560, at * 2 (finding reversible error where ALJ's RFC limited claimant to simple, routine tasks, but failed to either incorporate or provide sufficient reasons to reject physician's opinion that claimant could understand, remember, and carry out two-step commands) (collecting cases).

In this case, although the ALJ did not incorporate the one and two-step limitations identified by the state agency physicians, Plaintiff's argument overlooks that the ALJ's limitation of Plaintiff to simple, routine tasks reflects the opinion of the consultative examiner, Dr. Steven C. Swanson. On April 21, 2013, Dr. Swanson, a clinical psychologist, opined, in relevant part, that Plaintiff could "understand, carry out and remember simple instructions," "maintain concentration," and "respond

8

appropriately to usual work situations," and that "[c]hanges in routine would not be very problematic for him." AR 503. The ALJ assigned "significant weight" to this portion of Dr. Swanson's opinion (AR 31), and it is consistent with the RFC limitation of Plaintiff to simple, routine tasks. Dr. Swanson's opinion alone may constitute substantial evidence supporting the RFC assessment. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that examining physician's "opinion alone constitutes substantial evidence" supporting RFC assessment "because it rests on his own independent examination of" claimant); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (when "opinion of a nontreating source is based on independent clinical findings," it "may itself be substantial evidence"). Plaintiff has not challenged the ALJ's assessment of Dr. Swanson's opinion.

Even assuming, however, that the ALJ erred either by failing to incorporate simple one- and two-step tasks in the RFC or by failing to explain why this limitation was rejected, any such error is harmless. An error is harmless if it is nonprejudicial to the claimant or is "inconsequential" to the ALJ's "ultimate nondisability determination". *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). As the Commissioner points out, the jobs of nut sorter (521.687-086) and assembler (734.687-018) both require only Level 1 reasoning, which is described as applying "commonsense understanding to carry out simple one-or two-step instructions," and is consistent with an RFC for performing one and two-step tasks. *See* Nut Sorter, DICOT 521.687-086 (G.P.O.), 1991 WL 674226; Assembler, DICOT 734.687-018 (G.P.O.), 1991 WL 679950; *see also Rounds*, 807 F.3d at 1002 (identifying close similarity between RFC for performing one- and two-step tasks and Level 1 reasoning and explaining that Level 1 reasoning entails the ability to "[a]pply commonsense understanding to carry out simple one-or two-step instructions"). *Grigsby*, 2010 WL 309013, at *2 ("The restriction to jobs involving no more than two-step instructions is what distinguishes Level 1 reasoning from Level 2 reasoning."). Because Plaintiff could perform those two jobs with an RFC for either simple, routine tasks (as testified to by the VE) or one- to two-step tasks (as indicated in the DOT), the ALJ's purported error is not prejudicial and is inconsequential to the ALJ's ultimate nondisability determination.

///

///

### 2. Social Interactions

Plaintiff next argues that the ALJ erred because she omitted from the RFC "either the 'low-stress' as phrased by Dr. Amada [sic] or the 'low demand' work setting described by Dr. Hawkins." (Doc. No. 13 at 10.)

The Commissioner counters that Plaintiff's assertion of error is "mistaken because such observations were simply recommendations about the best work environment for Plaintiff, not concrete functional limitations that the ALJ was required to consider in assessing Plaintiff's RFC." (Doc. No. 18 at 15.) The Court agrees.

As the Commissioner suggests, an ALJ may reasonably decline to adopt the opinion of a physician "offered as a recommendation, not an imperative." *Rounds*, 807 F.3d at 1006; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (emphasis in original). In this case, Dr. Amado opined that Plaintiff would "*fare best* in a low-stress nonpublic setting." AR 509 (emphasis added). While Dr. Amado identified the "best" setting for Plaintiff, there was no indication that such a setting was the most that Plaintiff could tolerate or that it was a necessary functional limitation. Thus, the ALJ was not required to adopt this portion of Dr. Amado's opinion offered as a recommendation. *See Carmickle*, 533 F.3d at 1165; *see also Fox v. Berryhill*, No. CV 16-4738-JPR, 2017 WL 3197215, at *4-*5 (C.D. Cal. July 27, 2017) (where physician stated that claimant would "do best" in a low stress job with no public contact, that statement reflected the physician's "stated preferences, not requirements, for work that would accommodate [claimant's] limitations;" finding ALJ "not required to address every word of [physician's] opinion."); *Leach v. Comm'r of Soc. Sec.*, No. CV 10-1128-PK, 2011 WL 7082543, at *8 (D. Or. Nov. 8, 2011), report and recommendation adopted sub nom. *Leach v. Astrue*, No. 3:10-CV-01128-PK, 2012 WL 195515 (D. Or. Jan. 23, 2012) (determining that RFC is "not an assessment of the ideal conditions under which the claimant will do best, fare best, or otherwise excel;" ALJ did not err by failing to include in RFC a physician's recommendation of conditions in which claimant would "fare best").

As to Dr. Hawkins, she opined that Plaintiff could "adapt to a low demand work setting consistent with simple work" and "[f]or greatest success, changes should be introduced gradually." AR 784 (emphasis added). Contrary to Plaintiff's assertion, the ALJ accommodated the "low demand

setting consistent with simple work" recommended by Dr. Hawkins by correspondingly limiting Plaintiff to "simple, routine work."[4] However, the ALJ was not required to accommodate Dr. Hawkins' opinion regarding those situations in which Plaintiff would have the "greatest success," as such an opinion reflects a recommendation, not an imperative. *Carmickle*, 533 F.3d at 1165.

Plaintiff also argues that the ALJ erred by failing to address the disagreement between Dr. Amado and Dr. Hawkins regarding Plaintiff's ability to interact with others. (Doc. No. 13 at 10.) As indicated above, the ALJ was not required to include Dr. Amado's recommendation that Plaintiff would "fare best in a low-stress nonpublic setting." AR 509. Similarly, the ALJ was not required to adopt Dr. Hawkins' opinion that Plaintiff "would be *best suited* to work with minimal social demands and no public contact." AR 784. As with Dr. Amado's statement, Dr. Hawkins' statement reflects a recommendation regarding the *best* situation for Plaintiff, not the most that he could tolerate. Moreover, both physicians opined that Plaintiff only had moderate limitations in the ability to interact appropriately with the general public and no other significant social interaction limitations. AR 508, 783. There is nothing to indicate that the ALJ's limitation of Plaintiff to occasional public contact failed to account for Plaintiff's moderate limitations in the ability to interact with the general public. Accordingly, the Court does not find error.

**B.     VE Testimony**

Plaintiff argues that the ALJ had a duty to identify and resolve a conflict between the VE's testimony and information in the Occupational Outlook Handbook ("OOH") and O*Net Online (O*Net) regarding non-economic data before finding that Plaintiff could perform other work in the national economy.[5] (Doc. No. 13 at 12-16.) Plaintiff's argument is unavailing.

No case, regulation, or statute suggests that an ALJ must *sua sponte* take administrative notice of the OOH or O*Net. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1109-10 and n. 6 (9th Cir. 2018).

---

[4] As noted above, even if the ALJ's RFC assessment should have included a limitation to one and two-step tasks, not merely "simple, routine work," the VE identified jobs consistent with the demands of simple work.

[5] Plaintiff requests that the court take judicial notice of certain sections of the O*NET OnLine DOT crosswalk search and Bureau of Labor Statistics, U.S. Department of Labor, Occupational Outlook Handbook. (Doc. No. 13-1.) For the reasons discussed in the opinion, the information in these publications is immaterial and unnecessary to the Court's determination. Accordingly, the request for judicial notice is HEREBY DENIED.

Although an ALJ is required to investigate and resolve any apparent conflict between the VE's testimony and the DOT, regardless of whether a claimant raises the conflict before the agency, there is no authority suggesting that the same is true for the OOH or the O*Net. *See* SSR 00-4P; *see also Holden v. Berryhill,* 722 F. App'x 675, 676 (9th Cir. 2018) (reiterating holding in *Shaibi that* ALJ has no obligation to *sua sponte* take judicial notice of the OOH; finding no error in ALJ's decision to rely on the VE's testimony without consulting the OOH); *Watts v. Berryhill*, No. CV 17-07736-JEM, 2018 WL 4961567, at *6 (C.D. Cal. Oct. 12, 2018) (noting ALJ need not sua sponte resolve conflicts as to sources other than the DOT); *Kirby v. Berryhill*, No. SA CV 18-497-E, 2018 WL 4927107, at *3 (C.D. Cal. Oct. 10, 2018) (holding "an ALJ is under no obligation to consult the OOH or to attempt to reconcile conflicts between the OOH and vocational expert testimony") (collecting cases); *Bennett v. Berryhill*, No. 2:17-CV-555-EFB, 2018 WL 4449415, at *5 (E.D. Cal. Sept. 18, 2018) (finding Plaintiff's argument that VE's testimony not consistent with OOH foreclosed by Ninth Circuit authority); *Wagner v. Berryhill*, 2018 WL 3956485, at *6 (C.D. Cal. Aug. 14, 2018) ("The ALJ had no obligation to address the VE's deviation from other sources such as O*NET or OOH"); *Beamesderfer v. Berryhill*, No. ED CV 17-0868 SS, 2018 WL 2315956, at *7 (C.D. Cal. May 18, 2018) ("While Agency guidelines require an ALJ to investigate and elicit a reasonable explanation for any conflict between the DOT and VE testimony. . . the guidelines do not require the ALJ to resolve conflicts between VE testimony and other vocational publications or information . . . .").

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff George Luis Mendoza.

IT IS SO ORDERED.

Dated: **March 18, 2019**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE